# United States Court of Appeals for the Federal Circuit

---

**FREDERICK C. GAZELLE,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1932

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-2272, Chief Judge Robert N. Davis, Senior Judge William A. Moorman, Judge Mary J. Schoelen.

---

Decided: August 22, 2017

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

COURTNEY D. ENLOW, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by SCOTT D. AUSTIN, ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER; MARTIE ADELMAN, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before PROST, *Chief Judge,* O'MALLEY and WALLACH,
*Circuit Judges.*

WALLACH*, Circuit Judge.*

Appellant Frederick C. Gazelle appeals the decision of
the U.S. Court of Appeals for Veterans Claims ("Veterans
Court"), which affirmed the Board of Veterans' Appeals
("Board") decision denying entitlement to special monthly
compensation under 38 U.S.C. § 1114(s)(1) (2012). *See
Gazelle v. McDonald*, 27 Vet. App. 461, 462–63 (2016).
We affirm.

## BACKGROUND

Mr. Gazelle served in the U.S. Army from 1962 to
1965, during which time he incurred several service-
connected disabilities. *See id.* at 463. Mr. Gazelle now
receives compensation for: (1) degenerative disc disease
and joint disease of the cervical spine rated at twenty
percent; (2) degenerative disc disease and spondylosis of
the thoracolumbar spine rated at twenty percent; (3) left
upper extremity radiculopathy rated at ten percent;
(4) left lower extremity radiculopathy rated at ten per-
cent; and (5) post-traumatic stress disorder. *Id.* In De-
cember 2009, a U.S. Department of Veterans Affairs
("VA") decision review officer increased Mr. Gazelle's
disability rating for his service-connected post-traumatic
stress disorder to 100 percent. *See* J.A. 40, 46.

In 2010, Mr. Gazelle filed a Notice of Disagreement
with the 2009 determination, alleging the VA failed to
award him additional special monthly compensation
under § 1114(s)(1).[1] *See* J.A. 48–49. Subsequently, in

————————————

[1] In relevant part, § 1114(s)(1) states that special
monthly compensation may be awarded "[i]f the veteran

2011, Mr. Gazelle was denied entitlement to special monthly compensation because he did not have additional service-connected "disabilities . . . independently ratable as [sixty percent] or more disabling." J.A. 65. Instead of adding together Mr. Gazelle's additional service-connected disabilities at their respective amounts, the VA calculated the independent additional rating via the combined ratings table pursuant to 38 C.F.R. § 4.25 (2010), which resulted in a combined rating of fifty percent. *See* J.A. 62, 65. In March of 2014, the Board affirmed the denial of entitlement to special monthly compensation using the same reasoning articulated by the VA. *See* J.A. 76–78 (applying 38 C.F.R. § 4.25).

Mr. Gazelle appealed the Board's decision to the Veterans Court. The Veterans Court held "that consistent with the plain meaning of subsection 1114(s), the Board appropriately applied the combined ratings table to determine eligibility for [special monthly compensation] benefits," and affirmed the Board's March 2014 decision. *Gazelle*, 27 Vet. App. at 463; *see id.* at 471. Mr. Gazelle appeals the Veterans Court's decision.

DISCUSSION

I. Standard of Review

The jurisdiction of this court to review decisions of the Veterans Court is limited by statute. *See* 38 U.S.C. § 7292; *Forshey v. Principi,* 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc), *superseded on other grounds by statute*, Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (2002). We "have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or

---

has a service-connected disability rated as total, and [] has additional service-connected disability or disabilities independently ratable at [sixty] percent or more . . . ." 38 U.S.C. § 1114(s)(1).

any interpretation thereof brought under [§ 7292], and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). "Except to the extent that an appeal . . . presents a constitutional issue, [we] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2). Because Mr. Gazelle challenges the Veterans Court's interpretation of § 1114, we have exclusive jurisdiction pursuant to § 7292(c). "We review statutory and regulatory interpretations of the Veterans Court *de novo.*" *Parrott v. Shulkin*, 851 F.3d 1242, 1247 (Fed. Cir. 2017) (internal quotation marks and citation omitted).

## II. The Veterans Court Did Not Err in Interpreting § 1114(s)(1)

Mr. Gazelle challenges the Veterans Court's statutory interpretation of § 1114(s)(1). He avers that the Veterans Court erred in affirming the Board's denial of his special monthly compensation because "[t]he *only* determination dictated by the plain language of the second requirement of § 1114(s)(1) is whether . . . independently rated additional disabilities add up to [sixty] percent or more," which is a "binary" determination. Appellant's Br. 9. Accordingly, Mr. Gazelle states that "there simply is no need to consider how multiple disabilities are capable of being rated together in the VA system." *Id.* at 12 (internal quotation marks omitted). He argues that "[t]he Veterans Court relied upon a misinterpretation of the meaning of the phrase 'additional disabilities independently ratable at [sixty] percent or more' because it considered the language of 38 U.S.C. §§ 1155 and 1157 and the applicability of the provisions of 38 C.F.R. § 4.25" in making its determination. *Id.* at 10. According to Mr. Gazelle, he is entitled to special monthly compensation under the proper interpretation of "additional disabilities ratable at [sixty] percent or more." *Id.* at 15–16.

### A. Principles of Statutory Interpretation

To determine whether the Veterans Court erred in reviewing the VA's interpretation of § 1114(s)(1), we review the statute pursuant to a two-step *Chevron* analysis. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); s*ee Guerra v. Shinseki*, 642 F.3d 1046, 1049 (Fed. Cir. 2011) (applying *Chevron* deference to the VA's interpretation of § 1114(s)). When reviewing an agency's construction of a statute, we must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If the answer is yes, then the inquiry ends, and we "must give effect" to Congress's unambiguous intent. *Id.* at 842–43; *see Sullivan v. Stroop*, 496 U.S. 478, 482 (1990) ("If the statute is clear and unambiguous that is the end of the matter, for the court . . . must give effect to the unambiguously expressed intent of Congress." (internal quotation marks and citation omitted)). We may find Congress has expressed unambiguous intent by examining "the statute's text, structure, and legislative history, and apply the relevant canons of interpretation." *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012) (quoting *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000)).

If Congress has not directly spoken to the precise question at issue, we must consider "whether the agency's answer [to the precise question at issue] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229–30 (2001)). For the reasons provided below, we conclude that § 1114(s)(1) is clear and unambiguous in its direction to calculate special monthly compensation using the combined ratings table.

## B. Subsection 1114(s)(1) Unambiguously Instructs the Use of the Combined Ratings Table

When interpreting a statute, we "begin with the language employed by Congress." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (internal quotation marks and citation omitted). The instant appeal focuses on § 1114(s)(1) because neither party contests that the veteran in this case has a service-connected disability rated as total. *See* Appellant's Br. 10–11; *see generally* Appellee's Br. Therefore, we limit our analysis to whether there are "additional service-connected disability or disabilities independently ratable at [sixty] percent or more." 38 U.S.C. § 1114(s)(1).

Congress did not explicitly define "independently" or "ratable" in the text of § 1114(s)(1) and, thus, it has not directly spoken to the precise question at issue. *See Chevron*, 467 U.S. at 842. In the absence of an express definition, we presume that Congress intended to give those words their plain and ordinary meanings. *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *Nielson v. Shinseki*, 607 F.3d 802, 805–06 (Fed. Cir. 2010). This ordinary meaning may be informed through the use of dictionaries. *See United States v. Rodgers*, 466 U.S. 475, 479 (1984). The dictionary defines "independently" as "without dependence on another: freely." *Independently*, Webster's Third New International Dictionary (1986). It defines "ratable" as "capable of being rated or estimated." *Ratable*, Webster's Third New International Dictionary (1986). Thus, the plain meaning of the statute is that additional service-connected disability or disabilities are not dependent on a service-connected disability that is rated as total. Rather, as applied to Mr. Gazelle's case, his additional disability or disabilities must be capable of being rated by the VA at sixty percent or greater.

Next, we consider whether Congress provided a method for assessing whether there are "additional service-connected disability or disabilities independently ratable at [sixty] percent or more." 38 U.S.C. § 1114(s)(1). The language of the statute does not identify the method the VA should use to rate multiple disabilities. However, "[i]n determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). Rather, we should "consider not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme." *Barela v. Shinseki*, 584 F.3d 1379, 1383 (Fed. Cir. 2009) (citations omitted).

It is also presumed that Congress "legislate[s] against the backdrop of existing law." *Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003). Thus, determining Congress's intended methodology for calculating these disabilities requires us to examine the existing statutes and regulations. As explained below, these statutes and regulations demonstrate that, at the time the statue was enacted, the VA's only method of rating multiple disabilities was to combine the ratings using the combined ratings table. Because Congress was fully aware of this, Congress unambiguously has provided the method for calculating disabilities under § 1114(s)(1).

In 1917, Congress authorized the VA to establish "[a] schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries." Act of Oct. 6, 1917, ch. 105, § 302(2), 40 Stat. 398, 406.[2] Pursuant to

---

[2]    This provision was codified and later redesignated as 38 U.S.C. § 1155. *See* Veterans' Benefits Act of 1957, Pub. L. No. 85-56, § 355, 71 Stat. 83, 103; Department of

this grant, the VA developed the combined ratings table in 1925 to rate multiple disabilities. *See* J.A. 81. This table did not function via simple addition of disability ratings; rather, "[b]ecause disability compensation is based on the entire person of the veteran, the ratings are . . . combined into a single rating . . . to determine the overall impairment of the veteran." *Amberman v. Shinseki*, 570 F.3d 1377, 1380 (Fed. Cir. 2009). This approach of providing a combination of ratings was again pursuant to regulations issued in 1933, *see* Exec. Order No. 6156, Part IV ¶ I (1933) (entitled "Veterans Regulation No. 1(a) Entitlement to Pensions"),[3] and again in 1945, *see* J.A. 82. In 1950, the VA yet again authorized the combination of ratings using the "tables and rules prescribed in the 1945 Schedule" when a veteran had "two or more [service-connected compensable] disabilities." J.A. 87 (alteration in original); *see* J.A. 90–91 (explaining that the 1950 regulation is now numbered as 38 C.F.R. § 3.323(a)). In 1958, Congress unified various statutory provisions affecting the VA into Title 38 of the United States Code. *See* Act of Sept. 2, 1958, Pub. L. No. 85-857, 72 Stat. 1105, 1105. This restructuring directed the VA to "provide for the combination of ratings and pay compensation at the rates prescribed in subchapter II [Wartime Disability Compensation]." *Id.* § 357, 72 Stat. at 1125.

In 1960, when Congress added the current subsection § 1114(s) to subchapter II of Title 38, *see* Act of July 14, 1960, Pub. L. No. 86-663, 74 Stat. 528, 528, a combined ratings table had already been in use, *see* Act of Sept. 2,

---

Veterans Affairs Codification Act, Pub. L. No. 102-83, § 5(a), 105 Stat. 378, 406 (1991).

[3] This provision was codified and later redesignated as 38 U.S.C. § 1157. *See* Veterans' Benefits Act § 357, 71 Stat. at 103; Department of Veterans Affairs Codification Act § 5(a), 105 Stat. at 406.

1958 § 314, 72 Stat. at 1120−21. Subsection 1114(s)(1)'s special monthly compensation was added to a schema that Congress intended to be effectuated while "provid[ing] for the combination of ratings," as they stated in plain language. *Id.* § 357, 72 Stat. at 1125. Accordingly, based on this existing law and our canons of statutory construction, it is evident that Congress intended for § 1114(s)(1) to utilize the combination of ratings and pay compensation using the combined ratings table. *See id.*; *Morgan*, 327 F.3d at 1361.

Additional support for this interpretation of § 1114(s)(1) is found by looking to its overall placement within Title 38 and the accompanying § 1155, "Authority for schedule for rating disabilities," and § 1157, "Combination of certain ratings." *See Barela*, 584 F.3d at 1383 (noting that statutory interpretation requires consideration of "not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme" (citing *Bailey v. United States*, 516 U.S. 137, 145 (1995))). While step one of *Chevron* may start by analyzing the plain language of the statute, it necessarily follows that the meaning of the language, "plain or not . . . depends on context." *See id.* (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). Taken in context, accompanying §§ 1155 and 1157 support our interpretation of § 1114(s)(1). Section 1155 authorizes the Secretary to adopt and apply a ratings schedule to address disabilities arising from "specific injuries or combination of injuries," 38 U.S.C. § 1155, and § 1157 directs that "the combination of ratings" apply to "the rates prescribed in subchapter II of this chapter," *id.* § 1157. Subsection 1114(s) was thereafter placed into, and enacted as part of, subchapter II. *See* Act of July 14, 1960, 74 Stat. at 528. As such, the accompanying statute structure makes clear that §§ 1155 and 1157 apply to the entirety of § 1114. *See Heino*, 683 F.3d at 1378 (allowing courts to consider a statute's structure under *Chevron* step-one). Accordingly, we hold

that § 1114(s)(1) unambiguously requires the veteran's additional disabilities be rated at least at sixty percent based upon the *combined ratings table* and not the addition of individual disability ratings as argued for by Mr. Gazelle.[4]

## CONCLUSION

We have considered Mr. Gazelle's remaining arguments and find them unpersuasive. Accordingly, the decision of the U.S. Court of Appeals for Veterans Claims is

## **AFFIRMED**

### COSTS

Each party shall bear its own costs.

---

[4] Mr. Gazelle does not contest the factual finding of a combined rating of his disabilities at fifty percent. *See generally* Appellant's Br. However, even if Mr. Gazelle were to contest this factual finding on appeal, we lack jurisdiction to review challenges to factual determinations or to reweigh the evidence that led to those determinations. *See Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact-finder. We lack jurisdiction to review these determinations.").