# United States Court of Appeals for the Federal Circuit

---

**WILLIE A. COUSIN,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2017-1971

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-2175, Senior Judge Alan G. Lance, Sr.

---

Decided: September 28, 2018

---

ANDREW DUFRESNE, Perkins Coie LLP, Madison, WI, argued for claimant-appellant. Also represented by KENNETH M. ALBRIDGE, III, Michael Best & Friedrich, LLP, Madison, WI.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR., CHAD A. READLER; LARA EILHARDT, BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

————————————

Before MOORE, SCHALL, and WALLACH, *Circuit Judges.*

MOORE, *Circuit Judge.*

Willie A. Cousin appeals a decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals. The Board held that a December 1954 regional office ("RO") rating decision, which denied disability compensation for a back condition, did not contain clear and unmistakable error. We reverse and remand.

## BACKGROUND

Mr. Cousin served in the U.S. Army from September 1951 to September 1953. His entrance examination in September 1951 showed normal findings as to his back. Soon after entering service, he injured his back while lifting cans full of ashes. About a month later, in May 1952, he complained of back pain that was "catching in nature," and he was diagnosed with a mild back strain, placed on medically restricted duty, and instructed to return to the orthopedic clinic one month later. In June 1952, his back condition was noted to have improved, and he was removed from medically restricted duty. Service treatment records from March 1953 note back pain prior to service and an x-ray showed a "pedicle defect L5" and "spondylolysis." J.A. 3; J.A. 79; J.A. 88; J.A. 320–21. Thereafter he was placed on a permanent profile for a "weak back," meaning he was determined to be unfit for lifting, bending, prolonged marching, or carrying a pack on his back. He was honorably discharged in September 1953. An examination report at the time of his discharge noted his back had been taped in 1952 and that he was then asymptomatic.

In July 1954, Mr. Cousin filed a claim seeking disability compensation for his back condition. The RO denied his claim in December 1954, stating:

> Service records show that, on 5-9-52, the veteran had a pain in the back "catching in nature." Examination showed a mild back strain. There is no further evidence of treatment or complaint of this condition. It is considered to have been acute, without residuals.

J.A. 299. Between 1979 and 2009, Mr. Cousin filed three applications to reopen his back claim, all of which were denied.

In January 2012, however, Mr. Cousin filed another application to reopen his claim, and in February 2013, the RO granted him service connection for a back disability effective January 19, 2012. Mr. Cousin filed a Notice of Disagreement, arguing that an earlier effective date was warranted because there was clear and unmistakable error ("CUE") in the prior denials,[1] which the RO denied. The Board denied his appeal, determining the 1954 decision was final and did not contain CUE. It acknowledged that the 1954 decision contains no reference to, or discussion of, the fact that Mr. Cousin was placed on a permanent physical profile for his back in March 1953, but noted under then-existing precedent the RO was not required to give a detailed explanation of its findings. Citing the 1946 Schedule for Rating Disabilities ("1946 schedule"), the Board found that because Mr. Cousin's 1953 x-ray revealed evidence of a "defect," the RO "might well have concluded that the condition" was a noncompensable "congenital defect." J.A. 88; J.A. 320–21.

---

[1]    Mr. Cousin's arguments on appeal, as they were to the Veterans Court, are directed to CUE in the RO's 1954 decision.

The Veterans Court affirmed the Board's decision, finding the Board "offered a plausible explanation for why the RO may have discounted the 1953 records." J.A. 5. It noted the RO was not required to fully explain its findings and found it was not clear from the decision that the RO failed to consider certain presumptions in Mr. Cousin's favor. Mr. Cousin appeals. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

Our review of Veterans Court decisions is limited by statute. We have jurisdiction under 38 U.S.C. § 7292(a) to review a decision of the Veterans Court "with respect to the validity of [the] decision . . . on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." *See also* § 7292(c). We review the Veterans Court's regulatory interpretations de novo. *Johnson v. McDonald*, 762 F.3d 1362, 1364 (Fed. Cir. 2014). "[W]e are prohibited, absent a constitutional issue, from reviewing challenges to factual determinations or the application of a statute or regulation to the facts of a particular case." *Dixon v. Shinseki*, 741 F.3d 1367, 1373 (Fed. Cir. 2014); *accord* § 7292(d)(2). "We have recognized, however, that where adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a question of law." *Dixon*, 741 F.3d at 1373 (quoting *Halpern v. Principi*, 384 F.3d 1297, 1306 (Fed. Cir. 2004)); *accord Conley v. Peake*, 543 F.3d 1301, 1304 (Fed. Cir. 2008).

The following must be demonstrated to establish CUE: (1) "Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied"; (2) "The error must be 'undebatable' and the sort 'which, had it not been made, would have manifestly changed the outcome at the time it was made'"; and (3) "A

determination that there was CUE must be based on the record and the law that existed at the time of the prior adjudication in question." *Morris v. Shinseki*, 678 F.3d 1346, 1351 (Fed. Cir. 2012) (quoting *Willsey v. Peake*, 535 F.3d 1368, 1371 (Fed. Cir. 2008)).

As an initial matter, we reject the government's argument that we lack jurisdiction over the Veterans Court's decision because it simply applied well-established CUE law to the facts of the case. Mr. Cousin's appeal raises an issue of regulatory interpretation over which we have jurisdiction. The Board found that the RO might have concluded Mr. Cousin's back condition was a "congenital defect" and thus non-compensable under the 1946 schedule. The Veterans Court held the Board's explanation was plausible. The Board's and Veterans Court's determinations relied on the legal meaning of a "congenital defect" in the 1946 schedule, which is an issue over which we have jurisdiction. *See* 38 U.S.C. § 7292(a), (c); *cf. Yates v. West*, 213 F.3d 1372, 1374 (Fed. Cir. 2000) ("We have jurisdiction over this appeal because it raises a challenge concerning the interpretation of the 'clear and unmistakable error' regulation that was relied on by the Court of Appeals for Veterans Claims.").

Mr. Cousin argues the Board and Veterans Court failed to apply the proper legal standard for determining whether a condition is a non-compensable "defect" in crediting the RO's decision. He argues his medical records demonstrated he had a back condition called spondylolysis, which, based on undisputed facts, is a "disease" capable of progression and not a "defect" for purposes of compensation under then-existing law.

In 1954, as today, wartime veterans could receive compensation for disability resulting from in-service "injury" or "disease." Veterans Regulation No. 1(a), part I, para. 1(a) (codified, without changes relevant here, as present day 38 U.S.C. § 1110); *see, e.g.*, *Joyce v. Nicholson*,

19 Vet. App. 36, 44–45 (2005). "Defects," however, were not compensable. The 1946 schedule, in effect at the time of the 1954 RO decision, provided:

> Mere congenital or developmental defects, absent, displaced or supernumerary parts, refractive error of the eye, personality disorder and mental deficiency are not diseases or injuries in the meaning of applicable legislation.

Effective April 1, 1946, published at 29 Fed. Reg. 6719, § 4.9 (1964).

It is undisputed that Mr. Cousin was diagnosed with spondylolysis in the medical records before the 1954 RO. Mr. Cousin's 1953 x-ray record determined that he had spondylolysis. J.A. 320–21. Based on that record, the Board specifically found that Mr. Cousin was "diagnosed [with] spondylolysis." J.A. 88. At oral argument, the government agreed the Board made this fact finding. Oral Arg. at 13:50–14:07, 16:20–25. We do not have jurisdiction to review the Board's finding that Mr. Cousin was diagnosed with spondylolysis, which the government conceded at oral argument. Oral Arg. at 15:37–16:37.

Further, the government conceded before the Veterans Court that spondylolysis is a degenerative disease. In his opening brief to the Veterans Court, Mr. Cousin alleged that his March 1953 records established his diagnosis of spondylolysis and that spondylolysis "is a form of degenerative change." J.A. 21–22; *see also* J.A. 57–58. The government represented to the Veterans Court that the "facts of this case are not in dispute" and it "accepts and adopts the statement of facts" in Mr. Cousin's opening brief. J.A. 43 & n.1; *see also* Oral Arg. at 16:20–32, 20:33–20:47 (admitting it made these concessions below).

Since the Board expressly found Mr. Cousin was diagnosed with spondylolysis, and the government conceded

that spondylolysis is a degenerative condition, the only way the 1954 RO could have found against Mr. Cousin is if it concluded the legal definition of "defect" under the 1946 schedule included degenerative conditions. That would have been error as a matter of law. At no point has the government suggested that the legal definition of "defect" could include a degenerative condition. To the contrary, the Department of Veterans Affairs and the government have argued that a "defect" under the regulation does *not* include degenerative conditions. The earliest (1990) VA General Counsel Opinion addressing the term "defect" under the closely related regulation at 38 C.F.R. § 3.303(c) credited as valid the view expressed in *Durham v. United States*, 214 F.2d 862, 875 (D.C. Cir. 1954), that, unlike a "disease," a "defect" is "incapable of any improvement or deterioration." VA Op. Gen. Couns. Prec. 82-90, Subject: Congenital/Developmental Conditions under 38 C.F.R. § 3.303(c), 1990 WL 10553739, at *2 (July 18, 1990). We afforded deference to this interpretation of the regulation, and held it reasonable, in *O'Bryan v. McDonald*, 771 F.3d 1376, 1379–81 (Fed. Cir. 2014). Significantly, the government has not argued that a different legal definition of "defect" should or could have been properly applied to the 1946 schedule. Indeed, the government takes the position that application of the interpretation of "defect" in the General Counsel Opinion to the facts here results in an affirmance. *See* Oral Arg. at 24:37–24:53 ("Regardless of how the term 'defect' is applied, even assuming that the . . . General Counsel opinion should be applied, a manifestly different result does not occur applying that definition of 'defect.'"). Thus, we are not retroactively applying this law; rather, we are interpreting the 1946 regulation in effect at the time. Whether a defect under the regulation can include a degenerative condition is a question of law over which we have jurisdiction. We conclude that "defect" is properly construed as excluding degenerative conditions, and we do not understand the government to contend otherwise in

this case. The government confirmed at oral argument that it "does not contend that spondylolysis is a defect." Oral Arg. at 19:50–20:11.

Given the proper legal interpretation of defect in the regulation in effect in 1946, and the concessions made by the government regarding the facts of this case, the RO could not, without error, have determined that spondylolysis was a "defect." Accordingly, we conclude as a matter of law that the RO's December 1954 decision contained CUE and that Mr. Cousin is entitled to an earlier effective date for his benefits. *See, e.g.*, *Groves v. Peake*, 524 F.3d 1306, 1310 (Fed. Cir. 2008) (concluding the Veterans Court legally erred by disregarding the applicability of a regulation and applying that regulation to undisputed diagnoses to determine a ratings decision contained CUE).

On appeal, the government also argues that the RO could have denied service connection because there was record evidence that Mr. Cousin was asymptomatic at his departure from the Army and that therefore his back condition was "acute, without residuals." Again, the government's concessions regarding the undisputed facts must control. The government conceded that Mr. Cousin had been placed on permanent profile for a "weak back" and deemed unfit for lifting, bending, prolonged marching, or even carrying a pack on his back. *See, e.g.*, J.A. 21–22; J.A. 43 & n.1; Oral Arg. at 17:07–17:42, 30:27–40. And the government accepted as true Mr. Cousin's claim that in "the months and years that followed [his service], Mr. Cousin continued to experience back trouble and degenerative changes *as a result of service.*" J.A. 22 (emphasis added); J.A. 43 & n.1. We have considered the government's remaining arguments and find them unpersuasive.

CONCLUSION

For the foregoing reasons, the decision of the Veterans Court is reversed. We remand for entry of judgment consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

Costs to appellant.